UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **CLAYTON CANGELOSI** | * | **CIVIL ACTION** |
|     **Plaintiff,** | | |
| | * | **NO:  20-1989** |
| **v.** | | |
| **JEFFERSON PARISH PRESIDENT** | * | **SECTION "R" MAG. 2** |
| **CYNTHIA LEE SHENG** | | |
|     **Defendant,** | | |

---

**MEMORANDUM IN SUPPORT OF JEFFERSON PARISH PRESIDENT CYNTHIA LEE SHENG'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(1) AND RULE 12(b)(6)**

---

Defendant, Jefferson Parish President Cynthia Lee Sheng ("President Lee Sheng"), through undersigned counsel, respectfully submits this memorandum in support of this Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) and Rule 12(b)(6), as a response to the original complaint and subsequent pleadings filed by Plaintiff, Clayton Cangelosi ("Cangelosi"). Cangelosi's claims for injunctive and declaratory relief must be dismissed for lack of subject matter jurisdiction because he does not have sufficient standing. The proclamation's enforcement clause does not apply to individuals like Cangelosi, his alleged injuries are not caused by President Lee Sheng's actions, and his injuries would not be redressed if this Court granted his requests for relief. In addition, Cangelosi's request for damages must be dismissed for failure to state a claim for which relief can be granted because President Lee Sheng is immune from liability. His request for injunctive and declaratory relief must also be dismissed for failing to state a claim for which

relief can be granted because Cangelosi cannot satisfy the burden required by law to enjoin a public health order, and he has not alleged that the proclamation violates a recognized constitutional right.

For these reasons, President Lee Sheng respectfully moves this Court to dismiss with prejudice all claims made Plaintiff, Clayton Cangelosi, in his original and amended complaints.

## FACTS AND PROCEDURAL HISTORY

Plaintiff Clayton Cangelosi ("Cangelosi") filed a previous lawsuit *in forma pauperis* against President Lee Sheng on March 12, 2020. That suit, brought in response to the President Lee Sheng's decision to cancel the St. Patrick's Day Parade due to COVID-19, sought $1,500,000 in damages as well and the removal of President Lee Sheng from office for "abuse of power."[1] This Court reviewed Cangelosi's pleadings and dismissed his complaint for lack of subject matter jurisdiction.

Cangelosi filed the instant matter *in forma pauperis* on July 13, 2020 against President Lee Sheng[2] in her official capacity as a response to a recent emergency proclamation, 10 CLS 2020, which requires all Parish residents to wear masks or other facial coverings in public to combat the spread of COVID-19. Specifically, the emergency proclamation requires all individuals in unincorporated Jefferson Parish to wear "personal protective masks or facial coverings while indoors and in any common area in all commercial buildings, public buildings, and places of worship" as well as when "[r]iding on public transportation or paratransit."[3] President Lee Sheng respectfully requests that this Court conduct another *in forma pauperis* review of Cangelosi's present lawsuit, and dismiss this matter as well.

The proclamation's enforcement provision states that any business owner, property owner,

---

[1] Civil Action No. 20-875.
[2] Cangelosi's complaint spells part of President Lee Sheng's last name as both "Shang" and "Sheng." (R. Doc. 1, p. 1). The correct spelling is "Sheng."
[3] Exhibit A, 10 CLS 2020, sections 1 and 2.

or representative of any entity that allows individuals to remain in commercial buildings, public buildings, or places of worship without masks or facial coverings will be subject to a fine and possible jail sentence. Importantly, the proclamation does not permit enforcement against *individuals* who refuse to wear masks in public; rather, the proclamation only permits Parish authorities to cite businesses or property owners that continuously allow patrons to congregate without masks.[4] The proclamation exempts various categories of people from the mask requirement, including children younger than two years of age, individuals with medical conditions that make wearing a mask difficult, those speaking with a hearing impaired individual who may rely on lip-reading for communication, et cetera.[5]

## PLAINTIFF'S COMPLAINT AND SUBSEQUENT PLEADINGS

Cangelosi's original complaint and subsequent pleadings are consistently vague, difficult to understand, and procedurally deficient. The factual allegations in Cangelosi's original petition contain multiple irrelevant statements about the history of quarantines during past health emergencies, his personal beliefs that the COVID-19 death toll in the U.S. is "artificially inflated," as well as numerous conclusory sentences about the infection and death rate statistics that are difficult to comprehend, both grammatically and mathematically. After reading the allegations, counsel for President Lee Sheng has interpreted Cangelosi's complaint and subsequent pleadings to allege the causes of action described below.

First, Cangelosi's original complaint alleges that proclamation 10 CLS 2020 violates his right to privacy and his right to breathe freely under the Fifth, Ninth, and Fourteenth Amendments of the U.S. Constitution.[6]  In Count II of the original complaint, he alleges that proclamation 10

---

[4] Exhibit A, 10 CLS 2020, sections 1 and 6.
[5] Exhibit A, 10 CLS 2020, section 3.
[6] R. Doc. 1, pg. 4.

CLS 2020 violates his rights to freedom of expression and assembly under the First Amendment, his "right to protest the perceived 'fear campaign' surrounding the SARS-CoV-2 outbreak," as well as his right to petition the government pursuant to the First, Ninth, and Fourteenth Amendments of the U.S. Constitution.[7] Count III alleges that proclamation 10 CLS 2020 violates Cangelosi's "right to travel freely" under the Fifth, Ninth, and Fourteenth Amendments, because he is now required to carry a mask with him in order to enter businesses.[8] Lastly, Cangelosi alleges in Count IV that proclamation 10 CLS 2020 violates his rights to make personal medical decisions for himself, because he believes that unrestricted access to fresh air will "give him a better chance to avoid infection."[9] Cangelosi concludes that, pursuant to 42 U.S.C. § 1983, President Lee Sheng is liable for violating his constitutional rights while acting under color of state law.[10] Cangelosi requests that this Court declare proclamation 10 CLS 2020 to be unconstitutional, and therefore null and void.

Cangelosi also requests that this Court "enjoy"[11] permanent enforcement of proclamations one through ten, despite the fact that Cangelosi does not mention the first nine proclamations anywhere else in his complaint.[12] He supports his complaint by attaching as an exhibit a copy of 89 JBE 2020, the emergency proclamation issued by Governor John Bel Edwards on July 11, 2020. The Governor's emergency proclamation does contain similar provisions to the one issued by the President Lee Sheng in that they both mandate mask wearing in public to combat the spread of COVID-19; however, nowhere in Cangelosi's petition does he address the Governor's proclamation, and Governor Edwards has not been named as a defendant in this suit.

---

[7] R. Doc. 1, pg. 5.
[8] R. Doc. 1, pg. 5.
[9] R. Doc. 1, pg. 6.
[10] R. Doc. 1, pg. 6.
[11] Defense counsel has and will continue to presume that Cangelosi intended to request that this Court *enjoin* the enforcement of all emergency proclamations.
[12] R. Doc. 1, pg. 7.

Cangelosi also fails to allege any facts or reasoning to support his request that this Court enjoin enforcement of President Lee Sheng's first nine proclamations. Most of those proclamations established policies that have little or no effect on the general public;[13] one proclamation has nothing to do with the COVID-19 crisis at all.[14] For ease of reference, counsel for President Lee Sheng has attached a copy of 10 CLS 2020 as an exhibit to this Motion to Dismiss; undersigned counsel respectfully requests that this Court take judicial notice of remaining proclamations one through nine pursuant to Federal Rule of Evidence 201.[15] The proclamations are all publicly available on the Parish's website under "News & Information" in the "COVID-19 Updates" section.[16]

Before President Lee Sheng had been served with the original complaint, Cangelosi filed an *ex parte* Motion for Declaratory Judgment and Injunctive Relief on July 16, 2020.[17] This procedurally deficient motion was never served on President Lee Sheng and, as of September 8, 2020, has not yet been set for hearing or otherwise ruled upon by this Court.[18] Cangelosi alleges in this pleading that proclamation 10 CLS 2020 violates his First, Fourth, and Fourteenth Amendment rights (although he does not explain how), as well as his rights under the Health Insurance Portability and Accountability Act (HIPAA) and the Fourth Amendment.[19] Cangelosi

---

[13] For example, 2 CLS 2020 outlined leave provisions for Parish employees unable to work from home, as well as lifted restrictions on the placement of temporary signs on the neutral ground so that local restaurants could easily communicate their adjusted operating hours to residents.

[14] 8 CLS 2020 merely declared a state of emergency in anticipation of Tropical Storm Cristobal.

[15] Fed. R. Evid. 201; see also *Funk v. Stryker Corp.*, 631 F3d 777, 782-83 (5th Cir. 2011) (noting that courts may take judicial notice of public records, such as a publicly-available document issued by a government agency, in a Rule 12(b) motion when those records are not subject to reasonable dispute).

[16] https://www.jeffparish.net/departments/public-information-office/covid-19/news-and-information/parish-president-s-proclamations

[17] R. Doc. 6.

[18] Cangelosi's motion for Declaratory Relief and Injunctive Relief was procedurally improper because it was done *ex parte*, without submission for hearing, and without service or notice to President Lee Sheng. Nevertheless, undersigned counsel understands that Cangelosi is representing himself *pro se* and is likely unfamiliar with the rules of service. In order to expedite the resolution of this matter, undersigned counsel is willing to accept service of Cangelosi's pleadings by email or certified U.S. mail, and will address his claims herein.

[19] R. Doc. 6, pg. 1.

again requested that this Court issue injunctive and declaratory relief to declare President Lee Sheng's emergency proclamation null and void.[20]

In support of his motion, Cangelosi attached copies of select portions of the Louisiana Homeland Security and Emergency Preparedness and Disaster Act ("LHSEPDA"), La. R.S. 29:721, *et seq*., and the Louisiana Emergency Health Powers Act ("LEHPA"), La. R.S. 29:760, *et seq*. However, it should be noted that President Lee Sheng has never issued an emergency proclamation pursuant to LHEPA because LHEPA only confers emergency powers upon the Governor, not parish presidents or other local officials.[21] Each of the President Lee Sheng's emergency proclamations for the COVID-19 crisis have instead been issued pursuant to LHSEPDA.[22]

Shortly thereafter, Cangelosi filed a motion for leave to file an amended prayer for relief.[23] In addition to repeated requests that this Court issue an order enjoining enforcement of all ten proclamations issued by President Lee Sheng and declaring them unconstitutional, Cangelosi also added a request for monetary damages in the amount of $1,500,000 for "emotional distress and humiliation," due to "being asked to leave and harassed in Public places due to the mandate." Cangelosi does not name any particular places that have asked him to leave for refusing to comply with 10 CLS 2020, does not describe the alleged incidents which supposedly caused such extreme emotional distress, and does not provide any legal support for his assertion that President Lee Sheng is somehow liable for the alleged harm caused by an unnamed third party.

Most recently, Cangelosi filed a motion for leave to file an amended complaint and to "add

---

[20] This pleading only mentions 10 CLS 2020, not the first nine proclamations.
[21] *See generally* La. R.S. 29:766.
[22] La. R.S. 29:727.
[23] R. Doc. 14.

evidence."[24] Here, Cangelosi alleges that proclamation 10 CLS 2020 violates a portion of LHSEPDA, La. R.S. 29:736(D). That statute provides that nothing in LHSEPDA shall "diminish the rights guaranteed to all persons under the Declaration of Rights of the Louisiana Constitution or the Bill of Rights of the United States Constitution." Nowhere in this pleading does Cangelosi explain exactly which rights in either the Louisiana or the U.S. Constitution are being violated, nor how they are being violated by President Lee Sheng's emergency proclamation. Furthermore, Cangelosi does not indicate if he intended to adopt and incorporate the allegations made in his original complaint into any of his subsequent pleadings.

## LAW AND ARGUMENT

### A.    Legal standard for a Rule (12)(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction.

Pursuant to Article III, Section 2 of the U.S. Constitution, federal courts have jurisdiction only over matters in which an actual case or controversy is at issue; "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."[25] A primary element of the case-or-controversy requirement is that a plaintiff "must establish that they have standing to sue."[26] The U.S. Supreme Court has held that, at a minimum, a plaintiff's claim must satisfy each of the following elements in order to establish standing:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must

---

[24] R. Doc. 17.
[25] *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997).
[26] *Raines*, 521 U.S. at 818; *DaimlerChrysler Corp.*, 547 U.S. at 342; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.[27]

If a plaintiff lacks standing to bring a claim, the court lacks subject matter jurisdiction over the claim, and dismissal under Federal Rule of Civil Procedure 12(b)(1) is appropriate.[28] The party seeking to invoke federal jurisdiction bears the burden of showing that standing existed at the time the lawsuit was filed.[29]

When, however, as in *Lujan*, a plaintiff's injury derives from the government's allegedly unlawful action toward *someone else*, more is necessary.[30] In that instance, "causation and redressability ordinarily hinge on the response of the regulated . . . third party to the government action."[31] In cases where the choice of a third party is essential to a plaintiff's standing, the plaintiff must introduce facts showing that the third party's choices "have been or will be made in such manner as to produce causation and permit redressability of injury."[32] While a plaintiff may still have standing where he is not the direct object of the government action, it is generally more difficult to establish.[33]

### 1) Cangelosi's complaints must be dismissed under Rule 12(b)(1) for lack of standing, because the proclamation only affects businesses.

Here, Cangelosi does not have standing to challenge 10 CLS 2020 because the Parish cannot enforce the proclamation's mask requirements against him. Rather, the proclamation only allows Parish code enforcement officials to cite *businesses or property owners* who consistently allow patrons to congregate inside without masks because of the public health danger such

---

[27] *Lujan,* 504 U.S. at 560–61 (internal citations omitted).
[28] Fed. R. Civ. P. 12(b)(1); *Whitmore v. Arkansas*, 495 U.S. 149, 154-55 (1990); *Chair King, Inc. v. Houston Cellular Corp.*, 131 F.3d 507, 509 (5th Cir. 1997).
[29] *M.D. Anderson Cancer Ctr. v. Novak*, 52 S.W.3d 704, 708 (Tex. 2001); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001); *Ramming*, 281 F.3d at 161.
[30] *Lujan*, 504 U.S. at 562.
[31] *Id*.
[32] *Id*.
[33] *Id*.

behavior creates. Cangelosi is free to forego wearing a mask in Jefferson Parish without fear of government reprisal, and businesses are free to allow or deny him entry. Businesses who allow persons without masks to enter may be subject to fines or other penalties, but Cangelosi does not represent their interests.

The situation at hand is similar to the case before the Supreme Court in *Lujan v. Defenders of Wildlife*, in which the defendant organization sought injunctive and declaratory relief requiring the U.S. Secretary of the Interior to rescind a rule that would have allegedly threatened endangered species abroad, but otherwise did not directly regulate the defendant organization itself.[34] The Supreme Court held that the in order to show standing for injunctive relief, the defendant would need to show that 1) certain endangered species abroad were "in fact being threatened" by the Secretary's rule, and 2) that one or more of defendant organization's members would thereby be "directly" affected in a manner that went beyond their mere "special interest" in the study of endangered animals.[35]

Here, Cangelosi has not alleged that he has, in fact, been harmed by as a direct result of proclamation 10 CLS 2020; he cannot make such a claim because the proclamation cannot be enforced against him.[36] Additionally, Cangelosi has not alleged that he is affected by the proclamation in manner that goes beyond mere interest. Like the defendant organization in *Lujan* whose members had no immediate plans to view the endangered animals potentially affected by the Secretary's rule, Cangelosi has not alleged that he has a particularized, concrete interest that

---

[34] *Lujan*, 504 U.S. at 558-59.
[35] *Id*. at 563.
[36] Counsel for President Lee Sheng acknowledges that Cangelosi has made scant allegations that he suffered "humiliation and emotional distress" because an unnamed third party business denied him entry due to his refusal to wear a mask. However, Cangelosi cites to no facts or authority to support the claim that President Lee Sheng is responsible for the actions of those third parties (see discussion *infra*).

faces immediate injury from the proclamation's enforcement provisions.[37]

**2) Cangelosi's complaints must be dismissed under Rule (12)(b)(1) for lack of standing because his alleged injuries are not fairly traceable to President Lee Sheng's proclamation.**

Cangelosi's claims must be dismissed for lack of standing because he has not (and cannot) allege that his injuries are fairly traceable to proclamation 10 CLS 2020. Even assuming the threadbare allegations that Cangelosi suffered "humiliation and emotional distress" were true, he has only alleged that his injury is due to the conduct of unnamed third parties—the businesses or entities that refused him entry for refusing to wear a mask.

Causation is not precluded where the defendant's actions produce a "determinative or coercive effect upon the action of someone else," resulting in injury.[38] However, the plaintiff's injuries cannot be "the result of the independent action of some third party not before the court."[39] Nor can they be "self-inflicted."[40] Here, Cangelosi has not alleged that the proclamation produced a "determinative" effect that resulted in his humiliation and emotional distress at the hands of unnamed business owners. It is entirely possible for a business to refuse entry to an individual for failure to wear a mask in a manner that does not cause humiliation or emotional distress; there is nothing inherent in proclamation 10 CLS 2020 that coerces business owners to act in a way that may embarrass potential customers. It also appears that Cangelosi's injuries are "self-inflicted," as it was his refusal to wear a mask upon entering a particular business that resulted in his emotional distress.

---

[37] See also *Lawrence v. Colorado*, 2020 WL 2737811 at *6-7 (D. Colo. 2020), in which the court found that a plaintiff had no standing to challenge the Colorado governor's COVID-19 stay-at-home orders that closed the plaintiff's church. "Because the injuries to Mr. Lawrence's religious exercise were not caused by the orders he challenges, and would not be redressed by the injunction he seeks, the Court cannot resolve his free exercise claim."

[38] *Inclusive Communities Project, Inc. v. Dept. of Treasury*, 946 F.3d 649, 655 (5th Cir. 2019) (citing *Bennett v. Spear*, 520 U.S. 154, 169 (1997)).

[39] *Id*.

[40] *Id*. (citing *Ass'n of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 358 (5th Cir. 1999)).

3) **Cangelosi's complaints must be dismissed under Rule 12(b)(1) for lack of standing because a positive outcome in this case would not provide redress for his injuries.**

Cangelosi's requests for injunctive and declaratory relief should be dismissed for lack of standing because a decision in his favor by this Court would not provide the relief he seeks. Even if this Court holds proclamation 10 CLS 2020 and the mask mandate to be unconstitutional, the mask requirement from Governor John Bel Edwards would still be in effect, and Cangelosi would still be bound by the Governor's requirement that all persons in Louisiana wear a mask in public places.[41] In other words, a ruling in Cangelosi's favor for injunctive and declaratory relief puts him in no different a position than he would be in had he not filed suit.[42]

B. **Legal standard for a Rule(12)(b)(6) Motion to Dismiss for failure to state a claim for which relief can be granted.**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted."[43] The purpose of Rule 12(b)(6) is to allow the Court the eliminate actions that are fatally flawed in their legal premises and destined to fail, and thus sparing litigants the burden of unnecessary pretrial and trial activity.[44] In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept the plaintiff's factual allegations as true.[45]

However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation."[46] Although the Court should accept as true all well-pled allegations, Rule 12(b)(6) authorizes this Court to dismiss any claim on the basis of a dispositive issue of law.[47] In other

---

[41] See R. Doc. 1, pg. 7, a copy of 89 JBE 2020 which Cangelosi attached to his complaint.
[42] For example, see *Lujan*, 504 U.S. at 568-69: "The most obvious problem in the present case is redressability . . . But [an order enjoining the Secretary] would not remedy respondents' alleged injury unless the funding agencies were bound by the Secretary's regulation, which is very much an open question."
[43] Fed. R. Civ. P. 12(b)(6).
[44] *See Neitzeke v. Williams*, 490 U.S. 319, 326-27 (1989).
[45] *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312-13 (5th Cir. 2002).
[46] *Papasan v. Allain*, 478 U.S. 265, 286 (1986).
[47] *See Neitzeke*, 490 U.S. at 326; *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

words, if a plaintiff is unable to prevail as a matter of law, even if all the allegations in his complaint are taken as true, then the claim "must be dismissed, without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."[48]

To survive a motion to dismiss, a plaintiff must also plead "enough facts to state a claim for relief that is plausible on its face."[49] The Supreme Court in *Ashcroft v. Iqbal* expounded upon the plausibility standard, finding that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[50] While a plaintiff need not provide "detailed factual allegations," he must plead more "than an unadorned, the-defendant-unlawfully-harmed-me accusation."[51]

Dismissal pursuant to Rule 12(b)(6) is appropriate because President Lee Sheng is immune from actions taken pursuant to the LHSEPDA. In addition, Cangelosi's complaints must be dismissed because he cannot overcome the burden required by *Jacobson* and *Abbott* to overturn an executive health mandate by injunction. Lastly, Cangelosi's claims must be dismissed pursuant to Rule 12(b)(6) because they are based on the false assertion that President Lee Sheng's emergency proclamation unconstitutionally violates various rights under the First, Fourth, Fifth, Ninth, and Fourteenth Amendments of the U.S. Constitution, as well as HIPAA and LHSEPDA. However, other courts have already upheld similar orders as constitutional.

1) <u>**Cangelosi's claims for damages should be dismissed because President Lee Sheng is immune from liability.**</u>

The Louisiana Homeland Security and Emergency Assistance and Disaster Act provides, in pertinent part:

Neither the state nor any political subdivision thereof, nor other agencies, nor,

---

[48] *Neitzeke*, 490 U.S. at 327.
[49] *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007).
[50] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[51] *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

except in case of willful misconduct, the agents' employees or representatives of any of them engaged in any homeland security and emergency preparedness and recovery activities, while complying with or attempting to comply with this Chapter or any rule or regulation promulgated pursuant to the provisions of this Chapter shall be liable for the death of or any injury to persons or damage to property as a result of such activity.[52]

A number of courts, both state and federal, have applied this statutory immunity to local officials. In *Nelson v. Nagin*, for example, the court concluded that the former mayor of New Orleans was entitled to immunity under LHSEPDA for his actions during and immediately after Hurricane Katrina, despite plaintiff's allegations that the mayor acted in a "careless and reckless manner."[53] The same result was reached in *Armstead v. Nagin*, *Freeman v. State*, *Fossier v. Jefferson Parish*, and *Martin v. United States*.[54]

Furthermore, La. R.S. 9:2798.1(B) provides immunity from liability for all officers of public entities who exercise "policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties." Here, President Lee Sheng is authorized to make emergency proclamations pursuant to La. R.S. 29:727. In addition to the authority to "[c]ontrol ingress and egress to and from the affected area, the movement of persons within the area, and the occupancy of premises therein," President Lee Sheng may implement other measures during the declared emergency, so long as those measures are within President's authority as conferred upon her by the Constitution, laws, or home rule charter.[55] The Louisiana Legislature

---

[52] La. R.S. 29:735(A)(1).

[53] 2007 WL 2122167 at *2 (E.D. La. 2007) (not reported).

[54] *Armstead v. Nagin*, 2006 WL 3861769 (E.D. La. 2006) (not reported) (local political subdivision, the levee district, was immune); *Freeman v. State*, 982 So. 2d 903 (La. Ct. App. 4ᵗʰ Cir. 2008) (directors of state and local agencies were immune for actions taken pursuant to homeland security and emergency preparedness activities where petition did not allege willful misconduct.); *Fossier v. Jefferson Parish*, 2008 WL 1735487 (La. Ct. App. 5ᵗʰ Cir. 2008) (Parish was immune from discretionary decision to not provide gas generators for certain pumping stations, despite likelihood that those stations would lose electrical power during hurricanes; Parish acted within its discretion due to budget constraints.); *Martin v. U.S.*, 2008 WL 11417740 (M.D. La. 2008) (not reported). *See also* La. Atty. Gen. Op. No. 08-0093 (finding this statute to be constitutional).

[55] La. R.S. 29:727(F).

delegated authority to local parishes to "enact ordinances and regulations . . . to protect their respective parishes against the introduction of every kind of contagious disease."[56]

Because President Lee Sheng's proclamation is a policymaking act within the scope of her "lawful powers and duties" as described above, she is entitled to immunity under La. R.S. 9:2798.1(B). President Lee Sheng is also immune from liability for any actions done in connection with her authority under LHSEADA that may have caused damage to Cangelosi. Therefore, Cangelosi's claims for $1,500,000 for the alleged humiliation and emotional distress he suffered should be dismissed with prejudice.[57]

**2)   Cangelosi's claims must be dismissed because he cannot state a legally cognizable claim for declaratory and injunctive relief under _Jacobson_ and _Abbott_.**

Injunctive relief is "an extraordinary and drastic remedy," and should only be granted when the movant has clearly carried the burden of persuasion.[58]  Specifically, the movant must show:

> (1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the injunction will not disserve the public interest.[59]

The standards for both a preliminary and permanent injunction are more or less the same, except that a permanent injunction requires proof of actual success on the merits as opposed to mere likelihood of success.[60] Cangelosi has not clarified whether he seeks a preliminary injunction or a permanent injunction in any of his pleadings. Regardless of which type of injunction he seeks,

---

[56] La. R.S. 33:1236(16).

[57] The court in _Freeman v. State_, 982 So. 2d at 908, found that the plaintiff was not entitled to amend his petition an additional time in hopes of overcoming the defendants' immunity. The Court of Appeal took judicial notice of "the abundance of literature generated by both government and private entities on the subject of sufficient preparedness for and response to Hurricane Katrina, and found this literature sufficiently provided plaintiff the opportunity to discover facts necessary to maintain his cause of action for willful misconduct." _Id._

[58] _Anderson v. Jackson_, 556 F.3d 351, 360 (5th Cir. 2009) (citing _Holland Am. Ins. Co. v. Succession of Roy,_ 777 F.2d 992, 997 (5th Cir. 1985)).

[59] _Anderson_, 556 F.3d at 360 (citing _Canal Auth. v. Callaway_, 489 F.2d 567, 572 (5th Cir. 1974)).

[60] _Amoco Prod. Co. v. Village of Gambell_, 480 U.S. 531, 546 n. 12 (1987).

Cangelosi's claims must be dismissed because under Rule 12(b)(6) because he cannot succeed on the merits; his pleadings do not show an actual violation of his constitutional rights.[61] Moreover, Cangelosi has not stated any facts that support granting his request for declaratory and injunctive relief in light of the rigorous standard imposed by *Jacobson* and *Abbott*, discussed below.

In light of the multitude of executive orders recently imposed around the country to limit the spread of COVID-19, many courts have been tasked with evaluating injunctions challenging the constitutionality of these orders. The Supreme Court's decision in *South Bay Pentecostal Church v. Newsom* and the Fifth Circuit's decision in *In re Abbott* both discussed the legal framework for granting injunctive or declaratory relief against COVID-19 public health orders promulgated by executive action.[62] In each case, the courts relied upon the Supreme Court's decision in *Jacobson v. Massachusetts*, in which the Court upheld a law passed by a local board of health which required mandatory smallpox vaccination for all residents of the town. The Court's opinion noted that:

> in every well-ordered society charged with the duty of conserving the safety of its members, the rights of the individual in respect of his liberty may at times, under the pressure of great dangers, be subjected to such restraint, to be enforced by reasonable regulations, as the safety of the general public may demand.[63]

In *South Bay*, the Supreme Court denied an application for injunctive relief sought by a church affected by the California governor's executive orders limiting gatherings to less than 100 people.[64] In his concurrence, Chief Justice John Roberts noted that the U.S. Constitution "principally entrusts '[t]he safety and the health of the people' to the politically accountable officials of the States 'to guard and protect.'"[65] "When those officials "undertake[] to act in areas

---

[61] *Unique Properties, LLC v. Terrebonne Parish Consol. Gov't*, 2004 WL 1278001 at *14 (E.D. La. 2004) (not reported) (citing *Causeway Medical Suite v. Ieyoub*, 905 F. Supp. 360, 366 (E.D. La. 1995)

[62] *South Bay Pentecostal Church v. Newsom*, 140 S. Ct. 1613 (mem.) (2020); *In re Abbott*, 954 F.3d 772 (5th Cir. 2020).

[63] *Jacobson*, 197 U.S. 11, 29 (1905).

[64] *South Bay*, 140 S. Ct. at 1613.

[65] *Id.*, citing *Jacobson v. Massachusetts*, 197 U.S. 11, 38 (1905).

fraught with medical and scientific uncertainties,' their latitude 'must be especially broad.'"[66] Assuming the broad limits of their power are not exceeded, Chief Justice Roberts noted that these decisions by state and local officials "should not be subject to second-guessing by an 'unelected federal judiciary.'"[67]

The Fifth Circuit's decision in *Abbott* was issued before *South Bay*, but it applies the same principles from *Jacobson v. Massachusetts* that Chief Justice Roberts relied upon in his concurrence.[68] *In Abbott*, the Fifth Circuit upheld the Texas governor's executive order that halted all "unnecessary" medical procedures because of the COVID-19 pandemic, including abortions; abortion providers filed suit to enjoin the order, alleging that it violated their substantive due process and equal protection rights. The Fifth Circuit noted that while individual rights do not "disappear" during a public health crisis, those rights may be "reasonably restricted."[69] Injunctive relief is available for these decisions only when "a statute purporting to have been enacted to protect the public health, the public morals, or the public safety, has *no real or substantial relation to those objects*, or is, *beyond all question, a plain, palpable invasion of rights secured by the fundamental law*."[70] In upholding the governor's ban on all unnecessary medical procedures, the court noted that while the order was a "drastic measure," it aligned "with the numerous drastic measures" that Texas and other states imposed to stop the spread of COVID-19.[71]

More recently, various district courts across the country have applied the *Jacobson* and *Abbott* holdings to injunctions against other COVID-19 public health orders. In each case, the courts have found that plaintiffs must meet an extraordinarily high bar. To satisfy the first

---

[66] *Id.*, citing *Marshall v. United States*, 414 U.S. 417, 427 (1974).
[67] *Id.* at 1613-14.
[68] *In re Abbott*, 954 F.3d 772, 778 (5th Cir. 2020).
[69] *Id.* at 784.
[70] *Id.* (emphasis in original), citing *Jacobson,* 197 U.S. at 31.
[71] *Id.* at. 787.

requirement for injunctive relief, they must show a likelihood of success on the merits against the *Jacobson*/*Abbott* framework: they must plead that the regulations at issue have *no real or substantial relation to protecting public health or safety,* or that they are, *beyond all question, a plain, palpable invasion of rights secured by the fundamental law.*[72]

Judge Feldman applied this framework when he denied the injunction filed by bar owners across Louisiana who sought to have Governor Edwards' emergency proclamation declared unconstitutional in *4 Aces Enterprises v. Edwards*.[73] Similarly, the district court judge in *Tigges v. Northam* denied a plaintiff's request for an injunction declaring the Virginia governor's emergency orders declared unconstitutional.[74] The plaintiff in *Tigges* "failed to show that the balance of equities tips in his favor or that an injunction would be in the public interest."[75] In both *4 Aces Enterprises* and *Tigges*, the plaintiffs had concrete injuries that were directly related to the governors' executive orders: their businesses were required to close. Yet despite their injuries, they were still unable to meet the high burden imposed by *Jacobson* and *Abbott*. Not only are Cangelosi's claims much more tenuous than those of the plaintiffs in *4 Aces* and *Tigges*, but he has not (and cannot) allege that proclamation 10 CLS 2020 has no real relation to protecting the public health—he just disagrees with it.

Due to the recent nature of the COVID-19 outbreak, there are very few court cases that directly address the constitutionality of face masks. Those that have mentioned them, however, indicate that face mask mandates are reasonably related to public health. For example, a district court judge in Maryland found that executive orders requiring face coverings in light of the

---

[72] *4 Aces Enterprises v. Edwards*, 2020 WL 4747660 at *9 (citing *Jacobson*, 197 U.S. at 31.)
[73] 2020 WL 4747660 at *12-13 (order issued August 17, 2020). The plaintiffs in this matter appealed to the Fifth Circuit on August 19, 2020.
[74] *Tigges v. Northam*, 2020 WL 4197610 (E.D. Va. 2020).
[75] *Tigges*, 2020 WL 4197610 at *10.

COVID-19 crisis do not violate the First Amendment, even when plaintiffs argued that wearing

face coverings (and, by extension, their decision not to wear said face coverings) constituted

"symbolic speech."[76]

> [W]hile wearing a face covering might be to several of the plaintiffs a "sign of
> capture on the battlefield, and subservience to the captor," that meaning is not
> "overwhelmingly apparent." Instead, especially in the context of COVID-19,
> wearing a face covering would be viewed as a means of preventing the spread of
> COVID-19, not as expressing any message. As the Supreme Court explained
> in *City of Dallas v. Stanglin*, "[i]t is possible to find some kernel of expression in
> almost every activity a person undertakes—for example, walking down the street
> or meeting one's friends at a shopping mall—but such a kernel is not sufficient to
> bring the activity within the protection of the First Amendment."[77]

The district court in *Legacy Church, Inc. v. Kunkel* also mentioned face masks in its

decision to dismiss a New Mexico church's complaint for injunctive relief against the governor's

COVID-19 orders.[78] There, the plaintiff church argued that the governor's May 15th executive

order, which imposed face mask requirements and limited indoor gatherings to 25% capacity,

violated their First Amendment rights to free exercise of their religion and freedom of assembly.[79]

The court granted the defendant's motion to dismiss, without giving plaintiff leave to amend their

complaint, and found that the church could not show a likelihood of success on the merits. "The

public's interest in limiting the COVID-19 outbreak in the State, a compelling interest[,] outweighs

the [First Amendment] right to gather."[80]

Finally, the district court in *Bannister v. Ige* discussed face masks in its decision to uphold

the governor of Hawaii's executive orders that imposed 14-day quarantines on all persons entering

Hawaii.[81] The plaintiff alleged that the quarantine order violated his due process rights because

---

[76] *Antietam Battlefield KOA v. Hogan*, 2020 WL 2556496 at *12. This case has been appealed to the Fourth Circuit, but no decision has been issued as of September 8, 2020.
[77] *Antietam Battlefield KOA* at *12 (citing *City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989)).
[78] 2020 WL 3963764 at *11-12, *104, *109-*112 (D.N.M. 2020) (appeal filed, but no decision rendered).
[79] *Id*. at *109-*112.
[80] *Id*. at *101, *104. The church appealed the district court's order to the Tenth Circuit on August 12, 2020, but the appellate court has not yet rendered a decision.
[81] 2020 WL 4209225 (D. Hawaii 2020).

there were other "partial restraints," like face masks and social distancing, that the governor could have mandated.[82] The court noted that "the use of face masks and social distancing . . . are not restraints."[83]

Based on the above, Cangelosi does not have a "likelihood of success on the merits" in light of the *Jacobson*/*Abbott* requirement that he show the mask mandate bears no relation whatsoever to public health and safety. Similarly, he has not alleged that his purported injuries outweigh the harm that will be done if his injunction is granted and the mask mandate is vacated. Cangelosi has also failed to allege that granting his request for an injunction would serve the public interest.[84] For these reasons, Cangelosi's requests for injunctive and declaratory relief should be dismissed.

### 3) <u>The proclamation's mask requirements do not violate any of Canglosi's constitutional rights.</u>

To state a claim for which relief can be granted under 42 U.S.C. § 1983, a plaintiff's complaint must show that state action caused the deprivation of a right that is secured by the U.S. Constitution.[85] Cangelosi's pleadings make bare assertions that President Lee Sheng's proclamation violates: 1) his rights to privacy and to choose what he wears, 2) his right to "breathe freely" and to make personal medical decisions for himself; 3) his First Amendment rights to freedom of expression and assembly; 4) his right to petition the government and his "right to protest the perceived 'fear campaign' surrounding the SARS-CoV-2 outbreak"; 5) his "right to travel freely" without having to carry a mask; and 6) his rights under the Health Insurance Portability and Accountability Act (HIPAA). However, he has cited to no authority whatsoever

---

[82] *Id.* at *5.
[83] *Id.*
[84] *Anderson*, 556 F.3d at 360 (citing *Canal Auth. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974)).
[85] *Martinez v. State of California*, 444 U.S. 277, 284 (1980); *Bradt v. Smith*, 634 F.2d 796, 799 (5th Cir. 1981).

that each of these rights have been recognized by the U.S. Supreme Court or that President Lee

Sheng's proclamation violates any of these rights. Moreover, other district courts have evaluated

similar COVID-19 public health orders and found no such violation of any constitutional rights.[86]

## **CONCLUSION**

Cangelosi's complaints for injunctive and declaratory relief must be dismissed pursuant to

Rule 12(b)(1) for lack of subject matter jurisdiction because he does not have sufficient standing.

The enforcement provisions in the proclamation do not apply to him, his alleged injuries are not

fairly traceable to President Lee Sheng's proclamation, and his injuries would not be redressed if

this Court granted his injunction because the Governor's mask mandate would still be in effect.

In addition, Cangelosi's claims for damages as well as injunctive and declaratory relief

must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim for which relief can be

granted. President Lee Sheng is immune from liability for actions taken pursuant to the authority

provided by the Louisiana Homeland Security and Emergency Preparedness and Disaster Act, La.

R.S. 29:735, as well as the general immunity offered by La. R.S. 9:2798.1(B) for discretionary

acts. Moreover, Cangelosi has not satisfied the requirements of *Jacobson* and *Abbott*, which

require plaintiffs seeking injunctive relief against a public health order to show that the order has

no real relation to preserving public health and safety, or that it is a "plain, palpable *invasion of

rights secured by the fundamental law." Cangelosi also fails to satisfy the remaining requirements

needed to sustain a request for injunctive relief: he makes no showing that his* purported injuries

outweigh the harm that will be done to the Parish and the general public if his injunction is granted

---

[86] *Tigges v. Northam, supra*; *Antietam Battlefield KOA v. Hogan*, 2020 WL 2556496 at *10-11 (D. Maryland 2020) (appeal filed May 22, 2020) (applying time, place, and manner restriction analysis to freedom of speech and assembly claim under Maryland's COVID-19 executive orders; orders were found to be constitutional); *Geller v. Cuomo*, 2020 WL 4463207 at *13 and n.26 (S.D.N.Y. 2020) (New York's COVID-19 orders did not infringe upon plaintiff's rights to make political speech).

and the mask mandate is vacated, and he has not alleged that granting his request for injunction would serve the public interest. Finally, Canglosi has not alleged that the proclamation violates a recognized constitutional right.

For these reasons, Defendant, Jefferson Parish President Cynthia Lee Sheng, respectfully moves this Court to dismiss with prejudice all claims made Plaintiff, Clayton Cangelosi, in his original and amended complaints.

Respectfully Submitted

**THE PARISH OF JEFFERSON**
**PEGGY O. BARTON, PARISH ATTORNEY**

*/s/ Victoria L. Wood*_____
**W. REED SMITH**, Bar No. 18440
**VICTORIA L. WOOD,** Bar No. 37553
Senior Assistant Parish Attorney
1221 Elmwood Park Boulevard; Suite 701
Jefferson, Louisiana 70123
Telephone     (504) 736-6300
Facsimile     (504) 736-6307
rsmith@jeffparish.net
vwood@jeffparish.net

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a copy of the foregoing pleading was electronically filed with the Clerk of Court through the CM/ECF system and all counsel were electronically notified or otherwise served by electronic transmission, facsimile transmission and/or by U.S. Mail, properly addressed and postage prepaid, on this the 8<u>th</u> day of <u>September</u>, 2020.

*/s/ Victoria L. Wood*__
VICTORIA L. WOOD